Jim GANGLE,
Lane County Assessor
*v.*
DEPARTMENT OF REVENUE
*and*
EVERGREEN UNION RETIREMENT
ASSOCIATION, INC.,
*Intervenor*
(TC 3384)

David B. Williams, Assistant County Counsel, Lane County, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, represented defendant.

Larry J. Anderson, Anderson & Clayton, Eugene, represented intervenor.

Decision for plaintiff rendered January 21, 1994.

## CARL N. BYERS, Judge.

Plaintiff appeals from defendant's Opinion and Order No. 92-0833 reducing the 1991 assessed value of intervenor's property. Intervenor is a nonprofit corporation operating the property as housing for the elderly.

The subject property is an 18-story retirement apartment complex in Eugene. Constructed in 1968, it has 222 living units plus common areas consisting of a recreation room, reading room, meeting area and lobby. It also has a cafeteria, beauty salon, coin-operated laundry, grocery store and management offices. The living units range in size from 418 square feet to 621 square feet.[1] The units have only limited appliances and features, resulting in limited market appeal. However, the property is well suited for its intended (current) use. The subject property is located close to downtown Eugene in an excellent neighborhood. It has 61 paved and 20 graveled parking spaces.

Plaintiff's appraiser used two approaches in valuing the property. In his income approach he relied upon the Jennings' rent analysis and projected a gross income of $1,022,168. After deducting vacancy and credit losses of 3 percent and operating expenses of 55 percent, he derived a net operating income of $446,176. Based on eight sales of comparable properties, he concluded that the appropriate overall capitalization rate would be 10.75 percent. Dividing $446,176 in income by a capitalization rate of 10.75 percent resulted in an indicated value of $4,150,474.

This appraiser's market approach consisted of a linear regression analysis of the comparable sales. That analysis relates the net operating income per unit to the price per unit. The linear relationship is graphed. Depending upon the degree of correlation, the graph permits one to project a price per unit based upon net income. In this case, the appraiser determined that the subject's projected net income would

---

[1] Both Jennings and plaintiff's appraiser agree on the square footage. Intervenor's appraiser, Skelte, says the range is from 358 square feet to 546 square feet. None of the witnesses addressed this discrepancy and the court is unable to read the dimensions contained in the reports. Accordingly, the court accepts the larger figures.

result in a price of $17,966 per unit, or a total market value of $3,988,452.

Intervenor's appraiser relied upon the income approach only. Although he also used the Jennings' rent analysis, he added data relating to the Eugene Hotel. This appraiser's determination of market rents resulted in an estimated gross income of $1,344,608. He estimated vacancy and credit losses of 5 percent but used actual operating expenses. This analysis produced a net operating income of $369,707.

Intervenor's appraiser explained that property taxes could be taken as a deduction or accounted for in the capitalization rate. Either approach results in approximately the same value, and the appraiser calculated the value both ways. First, he deducted property taxes as an expense, resulting in a net operating income of $369,707. He divided that income by a 12-percent capitalization rate, which results in an indicated value of $3,080,888. Second, without deducting property taxes, he calculated a net operating income of $448,927. He divided this amount by a capitalization rate of 14.572 (12 percent plus the millage rate of .02572), resulting in an indicated value of $3,080,748.

In both instances, however, the appraiser deducted accounting depreciation as an expense. The appraiser recognized this is not the normal procedure. However, as he interprets ORS 308.490(2), he believes this approach is proper. ORS 308.490(2) provides:

> "In determining the real market value of the property of a nonprofit home for elderly persons, operated by a corporation described in ORS 307.375, the county assessor shall not take into account considerations of replacement cost, but shall consider:
>
> "* * * * *
>
> "(b) The gross income that reasonably could be expected from the property if leased or rented to the public generally, less annual operating expenses, reserves for replacements and insurance, depreciation and taxes."

The appraiser believes "depreciation" refers to accounting depreciation as used in calculating income taxes or preparing financial statements.

■　　　The statute does not require a specific deduction of depreciation. Its express purpose is to determine "real market value." Accounting depreciation is not related to real market value. The legislature was not dictating a method of calculating value but simply indicating factors which diminish value. The statute directs the assessor to "consider" depreciation. Accordingly, the court finds the deduction of $66,000 as accounting depreciation is in error.

■　　　The court finds the preponderance of the evidence supports the rents and expenses used by intervenor's appraiser. The excellent location of the subject property makes it possible to achieve higher rents while the age of the property makes the expenses higher. Accordingly, the court finds the correct annual net operating income for the subject property is $520,927.[2]

The court does not accept intervenor's appraiser's capitalization rate. Most of intervenor's comparable sales are substantially smaller than the subject property. The Lane Tower Apartments, Vineyard Place and the Eugene Hotel, all of which are closer in size to the subject, should be given greater weight. The court finds the correct overall capitalization rate before taxes is 11.25 percent. When the millage rate of 2.572 is added, this results in a tax-adjusted rate of 13.822 percent. Dividing the net operating income of $520,920 by 13.822 percent gives an indicated value of $3,768,774. Plaintiff's appraiser derived an indicated value of $3,988,452 by the linear regression analysis. The court finds that the greatest reliance should be placed upon the income approach. Accordingly, the court finds the real market value as of July 1, 1991, was $3,770,000.

Costs to neither party.

---

[2] This amount reflects not only the adjustment for depreciation of $66,000 but also corrects a $6,000 error made in the calculation of the annual rent. The appraiser determined that the unit annual rent was $1,203,000. The correct amount ($100,750 multiplied by 12) is $1,209,000.